UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YANKTON SIOUX TRIBE,

                              Plaintiff,

v.                                                    Civil Action No. 03-01603 (TFH)

DAVID BERNHARDT, Secretary of the
Interior, *et al.*,

                              Defendants.

## MEMORANDUM OPINION

This long-pending case began in 2003 when the Yankton Sioux Tribe (hereinafter "the Tribe") sued the Secretaries of the Departments of the Interior and Treasury to obtain a declaratory judgment that the Government "ha[s] not provided the Tribe with a full and complete accounting of the Tribe's trust funds as require[d] by law," and an injunction requiring the Government to account for those funds. Compl. ¶¶ 27 & 30 [ECF No. 1]. The Tribe joined numerous other Indian tribes who were participating in a "collective process" to negotiate settlements with the United States over its mismanagement of tribal trusts. [ECF No. 68]. The Tribe and the United States engaged in settlement discussions for years.

On August 7, 2012, the Tribe's counsel, Herman, Mermelstein & Horowitz (hereinafter "Herman Law")[1] moved to withdraw as counsel and intervene to "assert[] a charging lien for work and services performed from the filing of th[e] action, July 28, 2003" through their

---

[1] Herman Law's name has changed since it originally represented the Tribe. Because those changes do not affect this motion, the Court refers to the firm's current name—Herman Law—throughout this opinion.

1

withdrawal. Mot. to Intervene at 2 ¶ 7 [ECF No. 69] (hereinafter "Mot. to Int."). Herman Law asserted its lien based on a retainer agreement with the Tribe that provided that the Tribe would pay Herman Law "25% of any recovery from the gross proceeds" of the litigation, along with Herman Law's costs. *Id.*; *see also* Mot. to Int. Ex. 1 (hereinafter "the Contingency Agreement"). Both the Tribe and the Government opposed the motion to intervene. [ECF Nos. 72 & 73]. Herman Law filed a reply. [ECF No. 74].

The case lay dormant for the next six years. At Herman Law's request, the Court held a status conference on June 7, 2018, and urged the parties to move expeditiously towards either settlement or trial. After the parties made progress towards finalizing a settlement, the Court set a hearing on the motion to intervene.[2] Given the length of time that had passed since Herman Law filed its motion, the Court allowed both the Tribe and Herman Law to file supplemental briefs citing any new legal authority relevant to the motion to intervene. [ECF No. 85]. The Tribe filed a supplemental brief on October 29, 2018 [ECF No. 88], and Herman Law filed one on November 13, 2018 [ECF No. 90], along with both sealed and unsealed exhibits, [ECF Nos. 86 & 92].

On March 8, 2019, the Court heard argument on Herman Law's motion to intervene, and denied the motion in a ruling from the bench. [ECF No. 100] (hereinafter "Hr'g Tr."). In denying the motion, the Court concluded that although Herman Law would otherwise have the right to intervene pursuant to Federal Rule of Civil Procedure 24(a), it could not do so because of the Tribe's sovereign immunity. Hr'g Tr. 24:18–25:8. The Court found that the Tribe did not waive sovereign immunity in the Contingency Agreement with Herman Law, *id.* at 24:11–17:

---

[2] The parties' proposed settlement has been approved by the Tribe, and is currently undergoing review by the Government. [ECF No. 109].

2

28:1–2, or via the "sue and be sued" clause in the Tribe's corporate charter, *id.* at 25:3–26:16; 28:2–3. Herman Law has appealed that ruling. [ECF No. 102].

Thereafter, Herman Law filed a motion for a stay pending its appeal of the Court's denial of its motion to intervene [ECF No. 104], and then filed an amended motion for a stay [ECF No. 105] (hereinafter "Am. Mot."). The Tribe opposed the original motion [ECF No. 106], and Herman Law replied [ECF No. 108].[3] According to Herman Law, the Government does not oppose the motion so long as it does not enjoin the Government.

## I. LEGAL STANDARD

A stay pending appeal is "extraordinary relief" involving the exercise of judicial discretion. *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam); *Nken v. Holder*, 556 U.S. 418, 433 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. Courts consider the following four factors when determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (internal quotation marks omitted). The first two factors are "the most critical." *Id.*

---

[3] The Tribe opposed the motion for a stay, and reserved the right to respond to the amended motion if the Court allowed Herman Law to file it. [ECF No. 106]. The Court permitted Herman Law to file its amended motion, but did not allow the Tribe to file an additional opposition to the amended motion because the two motions were essentially the same. Minute Order, April 26, 2019. Therefor, the Court considers the Tribe's opposition to the motion for a stay as its opposition to the amended motion.

3

## II. DISCUSSION

### a. Herman Law Has Not Made A Strong Showing that It is Likely to Succeed on the Merits of Its Appeal.

Herman Law argues that it is likely to succeed on the merits of its appeal because its intervention to assert a charging lien is not a "suit," and thus does not implicate the Tribe's sovereign immunity. Am. Mot. at 2. According to Herman Law, it gained an interest in 25% of the litigation proceeds pursuant to the Contingency Agreement. It is thus not seeking to divest the Tribe of any interest in the litigation that the Tribe currently possesses. *Id.* at 6–7. Meanwhile, the Tribe asserts that Herman Law seeks to "inject a contract dispute" into the Tribe's litigation against the Government, and that it is protected from the suit by its sovereign immunity, which the Tribe has not waived. Pl.'s Opp'n at 2–3.

#### i. Tribal Immunity

Indian tribes are "'separate sovereigns pre-existing the Constitution'" that enjoy the "'common law immunity from suit traditionally enjoyed by sovereign powers.'" *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)); *see Samantar v. Yousuf*, 560 U.S. 305, 311 (2010) (describing early foreign sovereign immunity caselaw as "extending virtually absolute immunity to foreign sovereigns").

Indian tribes are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). "The baseline position . . . is tribal immunity, and to abrogate such immunity, Congress must unequivocally express that purpose." *Michigan*, 572 U.S. at 790 (internal quotation marks omitted and edits accepted). Similarly, a tribe's "waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58 (internal quotation marks omitted); *see also C&L Enter., Inc. v. Citizen Band Potowatomi Indian Tribe of*

4

*Okla.*, 532 U.S. 411, 418 (2001) ("[T]o relinquish it's immunity, a tribe's waiver must be clear.") (internal quotation marks omitted). "A tribe does not automatically open itself up to counterclaims simply by virtue of filing a suit," and a tribe does not lose its immunity "by instituting an action, even when the defendant files a compulsory counterclaim." *Wichita and Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 773-74 (D.C. Cir. 1986). Furthermore, absent a waiver of sovereign immunity in a contract's provisions, "[t]ribes enjoy immunity from suits on contracts." *Kiowa Tribe*, 523 U.S. at 754.

### ii. Analysis

Given both the broad scope of tribal immunity and the nature of charging liens in the District of Columbia, Herman Law has not made a strong showing that it is likely to succeed on the merits of its appeal. Specifically, the Court is not persuaded that Herman Law will prevail on its argument that its motion to intervene to assert a charging lien is not a "suit" triggering tribal immunity. Am. Mot. at 8–9.

Charging liens arise "when an attorney obtains a judgment or decree for a client, and ha[ve] been characterized as merely a claim to the equitable interference by the court to have that judgment held as security" for the attorney's charges for his or her representation. *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996) (internal quotation marks omitted and edits accepted). Herman Law argues that its intervention to assert a charging lien is not "a suit" because it already has a vested interest in 25% of the Tribe's recovery. Am. Mot. at 8–9. There is some truth to that assertion. In the District of Columbia, charging liens give attorneys an "interest in the cause of action" they are litigating. *Cont'l Cas. Co. v. Kelly*, 106 F.2d 841, 843 (D.C. Cir. 1939); *see also Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 106 (D.D.C. 2016) (quoting *Martens v. Hadley Mem'l Hosp.*, 753 F. Supp. 371, 372 (D.D.C. 1990)) ("This Circuit

has long allowed attorneys to intervene in the underlying case to protect their interests, recognizing that charging liens 'arise[ ] out of the underlying action and relate[ ] back to the inception of the action.'"), *aff'd Peterson v. Islamic Republic of Iran*, 724 Fed. App'x 1 (D.C. Cir. 2018) (per curiam).

But that interest stems from an agreement between the attorney and his or her former client. *See Peterson*, 724 Fed. App'x at 3 ("[A] lawyer's lien against a client's funds may arise by operation of law, but it requires proof of (1) an agreement between lawyer and client (2) contemplating that the lawyer's fee will be paid from the client's judgment."); *Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 941 F.2d 1217, 1220 (D.C. Cir. 1991) ("[I]n order to assert a valid attorney's charging lien, there must be an agreement between client and counsel, either express or implied, that the attorney's fee would be paid from any recovery in the case."); *Falcone v. Hall*, 235 F.2d 860, 862 (D.C. Cir. 1956) ("[t]his interest is treated for purposes of recognition as an equitable or contract lien"); *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1173 (D.C. 1991) ("The 'nonpossessory lien of an attorney is a creature of contract.'") (Wagner, J., concurring in part and dissenting in part) (quoting *Pink v. Farrington*, 92 F.2d 465, 467 (D.C. Cir. 1937). Moreover, "whether or not an attorney's charging lien has been created depends on the language and surrounding circumstances of the employment agreement." *Elam*, 598 A.2d at 1168; *see, e.g., Peterson*, 724 Fed. App'x at 4 (analyzing retainer agreement to determine whether attorneys could assert a charging lien); *Elam*, 598 A.2d at 1169-71 (same).

Charging liens can provide attorneys with unique protections that ordinary contracts may not provide, including allowing attorneys to invoke "the power of the court to preserve the judgment pending payment of the contracted-for charges." *Peterson*, 724 Fed. App'x at 4.

6

However, given that an attorney's interest in a charging lien stems from a contract, an attorney's intervention to enforce a charging lien against a former client is akin to a suit on a contract. Because "[t]ribes enjoy immunity from suits on contracts," *Kiowa Tribe*, 523 U.S. at 760, Herman Law's ability to assert a charging lien against the Yankton Sioux Tribe depends on whether the Tribe waived its sovereign immunity in the Contingency Agreement. The Court already examined the Contingency Agreement and concluded that the Tribe did not waive its immunity. Hr'g Tr. 24:11–17; 28:1–2.

Herman Law does not cite any caselaw directly supporting its argument that charging liens do not implicate sovereign immunity.[4] It does, however, take issue with the Court's questioning of Herman Law on the import of *Watters v. WMATA* during the hearing on the motion to intervene. 295 F.3d 36 (D.C. Cir. 2002) (hereinafter "*Watters*"); Hr'g Tr. at 10:20–11:24; 13:11–17. In *Watters*, an attorney sued the Washington Metropolitan Area Transit Authority ("WMATA") on behalf of his client. After his client dismissed him, he tried to hold WMATA accountable for his attorney's fees by sending "WMATA a letter asserting an attorney's lien," then suing WMATA for breaching its duty to enforce the lien after WMATA paid the entire settlement to his client. *Id.* at 38–9. The D.C. Circuit held that there was "no question" that the sovereign immunity of the District of Columbia, Maryland, and Virginia

---

[4] In its briefing on the motion to intervene, Herman Law argued that its intervention amounted to a claim for recoupment, a "procedural device by which a defendant seeks to reduce the amount he owes to a plaintiff by the value of the plaintiff's cross-obligations to the defendant." *Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 246 (D.C. Cir. 1995). In support of its argument, Herman Law contended that it did not seek "affirmative relief," but rather "to protect its interest in the recovery obtained in the case which is expressed as a portion of the claim or recovery, and cannot exceed the Tribe's recovery." Reply in Supp. of Mot. to Int. at 12 [ECF No. 74]; Supp. to Mot. to Int. at 11–12 [ECF No. 90]. Although courts have found waivers of tribal immunity where parties have asserted claims of recoupment, the Court rejected that argument here because Herman Law's claims do not meet any of the elements required for recoupment. Hr'g Tr. 26:17–27:25; *see, e.g., Quinault Indian Nation v. Pearson for Estate of Comenout*, 868 F.3d 1093, 1100 (9th Cir. 2017).

7

"extends to suits for breach of attorney's liens." *Id.* at 39. Because the sovereignty of the aforementioned states has been "conferred" on WMATA, the Circuit concluded that "unless WMATA's sovereign immunity has been waived, the district court lacks jurisdiction to enter a judgment against [WMATA]." *Id.* at 39–40.

Herman Law argues that the Court "misapprehended the scope" of *Watters*, and contends that *Watters* involved an "independent suit for breach of an attorney's lien by a third party," whereas it is "not seeking a money judgment for its attorney's fees against a sovereign." Am. Mot. at 8. It also argues that the "critical distinction" between this case and *Watters* relates to *Watters'* concern that judgment creditors could negatively impact the fiscal integrity of local governments. *Id.* at 8. In response, the Tribe argues that Herman Law ignores the Circuit's reasoning and the decision's "general application to third party claims asserting [sic] liens against a sovereign." Pl.'s Opp'n at 4.

As Herman Law asserts, there are procedural differences between *Watters* and the instant action. Am. Mot. at 8. In *Watters*, the attorney sued to assert a charging lien against WMATA after his client did not compensate him; here, Herman Law seeks to intervene to assert a charging lien directly against its former client. *Watters*, 295 F.3d at 3. Despite this distinction, by finding Virginia, Maryland, the District of Columbia and, by extension, WMATA immune from the enforcement of charging liens, *Watters* supports the notion that suits to enforce charging liens also implicate tribal immunity. *Watters*, 295 F.3d at 39; *see also Knight v. United States*, 982 F.2d 1573, 1576 (Fed. Cir. 1993) (finding a claim against the United States to enforce a lien statute barred by sovereign immunity where a law firm sued the United States asserting "a lien for fees due from its [individual] clients."). Although "the immunity possessed by Indian tribes is not coextensive with that of the States," that is because "tribal immunity is a matter of federal

8

law and is not subject to diminution by the States." *Kiowa Tribe*, 523 U.S. at 756; *see Michigan*, 572 U.S. at 789 (noting that "the qualified nature of Indian sovereignty modifies" the principle of tribal immunity from suit "only by placing a tribe's immunity, like its other governmental powers and attributes, in Congress's hands"). It is not, as Herman Law implies, because the Tribe necessarily enjoys less immunity than states.[5] Am. Mot. at 5.

Furthermore, the Court is still not convinced that the distinction between an independent suit to enforce a charging lien and a motion to intervene should lead the Court to "suddenly . . . start carving out exceptions" to tribal immunity in the absence of any authority directly supporting Herman Law's position. *Michigan*, 572 U.S. at 790; *Upper Skagit Indian Tribe v. Lundgren*, 138 S.Ct. 1649, 1654 (2018) ("Determining the limits on the sovereign immunity held by Indian tribes is a grave question . . . ."). Herman Law does in fact seek compensation from a sovereign. If the Court ruled that the Contingency Agreement were valid—an issue the parties dispute—the Court would then need to oversee distribution of a portion of the settlement proceeds to Herman Law, reducing the Tribe's recovery. This would interfere with the Tribe's ability to manage its own finances and internal affairs, and raise somewhat similar concerns about the Tribe's "public fisc" raised by the D.C. Circuit in *Watters* related to state governments. *Watters*, 295 F.3d at 42; Pl.'s Opp'n at 7–8; *see Okla. Tax Comm'n v. Citizen Band Ptawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510 (1991) (discussing, in the context of "suits to enforce

---

[5] For example, Herman Law plucks language from the Tenth Circuit's decision in *Bonnet v. Harvest (U.S.) Holdings* stating that the scope of tribal immunity is more limited than the immunity afforded to states under the Eleventh Amendment. Am. Mot. at 5 (quoting *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1160-6 (10th Cir. 2014)). However, *Bonnet* went on to explain that this language, derived from an earlier opinion, meant that "unlike Eleventh Amendment immunity, tribal immunity is a matter of federal common law, not a constitutional guarantee, and its scope is subject to congressional control and modification." *Bonnet*, 741 F.3d at 1161 (internal quotations omitted and edits accepted). There are a number of ways Indian tribes have broader immunity than states. *See, e.g., Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 782 (1991) ("We have repeatedly held that Indian tribes enjoy immunity against suits by States").

tax assessments . . . Congress' desire to promote the goal of Indian self-government, including its overriding goal of encouraging tribal self-sufficiency and economic development") (internal quotation marks omitted). For these reasons, Herman Law has not made a strong showing that it is likely to succeed on the merits of its appeal.

Herman Law also now urges the Court that it will prevail on appeal because it should have considered whether its intervention is a "suit" within the Eleventh Amendment, citing cases from the Eighth and Tenth Circuits. Herman Law did not raise this issue when it sought to intervene—despite updating its briefing on the motion to intervene. As such, it has not made a strong showing that it will succeed on those grounds. *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1083 (D.C. Cir. 1984) ("[I]ssues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.).

### b. Herman Law Has Not Demonstrated that It Will Be Irreparably Injured Absent a Stay.

Herman Law asserts that it will be irreparably harmed absent a stay because the Government will pay the full settlement to the Tribe, Herman Law's appeal will be "rendered moot," and the Tribe's sovereign immunity will bar Herman Law from bringing claims in state or federal court. Am. Mot. at 9. In contrast, the Tribe argues that Herman Law will not be irreparably harmed absent a stay because Herman Law has rejected the Tribe's past offers to negotiate payment. Pl.'s Opp'n at 6–7.

It is a general rule that "economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Id.* Economic harm that can never be recovered can constitute irreparable harm, and is judged by "a less stringent standard." *Nat. Lifeline Ass's v. Fed. Commc'ns Comm'n*, No. 18-

1026, 2018 WL 4154794, at *1 (D.C. Cir. Aug. 10, 2018) (per curiam). However, the harm must be "'certain and great'" and "imminent." *Humane Soc. of United States v. Cavel Intern., Inc.*, No. 07-5120, 2007 WL 4723381, at *2 (D.C. Cir. May 1, 2007) (per curiam) (quoting *Wis. Gas Co.*, 758 F.2d at 674).

Herman Law does not allege any specific effects that it will suffer if a stay is not granted, and it provides no support, for example through an affidavit or declaration, for its assertions. As such, Herman Law has not alleged that it will suffer "concrete and corroborated, not merely speculative" harm absent a stay. *Benoit v. District of Columbia*, No. 18-1104, 2018 WL 5281908, at *6 (D.D.C. Oct. 24, 2018) (quoting *Toxco, Inc. v. Chu*, 724 F. Supp. 2d 16, 30 (D.D.C. 2010)); *Humane Soc. of United States*, 2007 WL 4723381, at *6 (finding that "two sparsely-substantiated declarations" were insufficient to demonstrate the "certain," "great," and "imminent irreparable harm needed to justify imposition of a stay"). Furthermore, even if the Court accepts Herman Law's unsubstantiated assertion that its claim would become moot—and its economic harms permanent—absent a stay, "the 'fact that economic losses may be unrecoverable does not, in and of itself, compel a finding of irreparable harm' . . . for the harm must also be 'more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff.'" *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 36 (D.D.C. 2014) (quoting *Mylan Pharm., Inc v. Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000)).

c.  **A Stay Would Not Substantially Injure the Other Parties Interested in the Proceeding.**

The Tribe contends that a stay would disrupt the lawsuit it has been pursuing for over a decade, and would deprive it of "critical funds to perform essential government functions for its members." Pl.'s Opp'n at 7–8. In contrast, Herman Law argues that the lengthy lack of activity in

this case demonstrates that neither the Tribe nor the Government would suffer substantial injury if the case were stayed. Reply at 6.

There is no doubt that a stay would delay payment to the Tribe of at least a portion of the settlement. However, the Tribe did not litigate this case for six years, and it appears that no settlement discussions took place during that time. The parties only restarted settlement negotiations because the Court held a status conference at Herman Law's prompting. Furthermore, although it is undergoing final review by the Government, the parties still have not finalized the settlement. In light of the delays attributable to the parties in this case, further delays will not substantially injure them.

### d. The Public Interest Weighs Against a Stay.

Herman Law argues both that the public interest is "not significantly implicated in this matter," and that the public interest will not be served if the settlement funds are distributed to Herman Law's detriment. Am. Mot. at 10–11. However, despite Herman Law's claims to the contrary, this case involves the federal government's trust responsibilities to the Yankton Sioux Tribe, duties that are "grounded in the very nature of the government-Indian relationship." *Cobell v. Norton*, 240 F.3d 1081, 1086 (D.C. Cir. 2001). As the Tribe notes, their case is one of the last in a long line of cases brought by Indian tribes seeking an accounting of tribal trusts held by the federal government. *See, e.g., id.* The public interest in resolving this case is strong, and weighs heavily against a stay.

## III. CONCLUSION

Herman Law has not met its burden to demonstrate the extraordinary circumstances necessary to justify a stay.[6] Accordingly, Herman Law's Amended Motion for a Stay will be denied. An appropriate order accompanies this opinion.

August 8, 2019

_____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] The Court need not determine whether the stay factors should be weighed on a "sliding-scale," because Herman Law has not made a "strong showing on one factor [that] could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011); *see Steele v. United States*, 287 F. Supp. 3d 1, 3 (D.D.C. 2017) (discussing the viability of the "sliding-scale" approach, and determining that the movant failed to meet even the "sliding-scale" approaches' lower standard).